## Commonwealth v. Ciotti

*Robert C. Brabender,* for petitioners.
*Ted G. Miller,* for respondent.

FISCHER, J., May 8, 1985—This matter comes before the court on the petition of Carlo Pozutti, An-

thony Ciotti, Sr. and the estate of Frank Dovishaw, bondsmen, to set aside a forfeiture of bond previously ordered by this court. We shall deny the petition.

On June 21, 1978, defendant was convicted by a jury of Erie County and was appropriately sentenced on November 2, 1978 by the Honorable Edward H. Carney.

Defendant filed a timely appeal to the Superior Court and, having been denied bail pending appeal by the trial court, petitioned the Superior Court to set bail. On December 1, 1978, the Superior Court entered an order setting bail pending disposition of the appeal in the amount of $30,000 cash. Each of the bondsmen subsequently deposited $10,000 with the Clerk of Courts of Erie County and simultaneously executed a bail bond in the form prescribed by Pennsylvania Rule of Criminal Procedure 4014.

During the pendency of the appeal, defendant was arrested, convicted and sentenced in the United States District Court for the Western District of Pennsylvania. Defendant was directed by the district court to present himself to the federal penitentiary on May 17, 1983. Defendant failed to appear on that date.

On November 14, 1984, the Pennsylvania Superior Court upheld defendant's Erie County conviction and defendant was directed to appear on November 27, 1984 to serve the imposed sentence. Not surprisingly, defendant failed to appear on that date also.

On November 30, 1984, this court declared the $30,000 bail bond forfeited and subsequently the Superior Court similarly declared it forfeited.

On January 7, 1985, judgment by confession was entered on the forfeited bonds against the bondsmen and on behalf of the Commonwealth of Pennsylvania for the use of the County of Erie. No relief

has been sought from those judgments. The petition to set aside the forefeiture followed and a hearing was held on that petition on February 25, 1985.

At the hearing, the only testimony offered by petitioners was that of Carlo Pozzutti. Mr. Pozzutti testified that he did not know the whereabouts of defendant, had not heard from defendant and had made no efforts to locate and apprehend him.

Mr. Pozzutti also testified that, at some unspecified date while the Pennsylvania appeal process was pending, he presented a petition to the Erie County Court requesting either the return of his bail money or permission to substitute a certificate of deposit. He further stated that Judge Carney granted the petition but that the judge's order was not accepted by the Erie County Clerk of Courts because the bail bond had been set by the Superior Court, not the trial court. Attorney Joseph Messina submitted an affidavit verifying the presentation of the petition to Judge Carney and the subsequent refusal of the clerk of courts to accept that order. Neither the petition nor the order appear on the docket of these proceedings and neither the original nor a copy of either document has been presented to this court. While we accept that the averments of Mr. Pozzutti and Attorney Messina are factual, we find them irrelevant.

We begin our analysis of this matter by first stating that we have serious problems even accepting jurisdiction to hear this petition. Since the appeal bond was set by the Superior Court, it is logical to assume that only that court can declare a forfeiture and only that court should hear this petition. Rule 4016 of the Pennsylvania Rules of Criminal Procedure dealing with breach of bail and forfeiture of bond states that "when a breach of a condition of bail occurs, the issuing authority or court may de-

clare the bond forfeited and make a record thereof," and "the issuing authority or the court may directed that a forfeiture be set aside upon such condition as may be imposed if it appears that justice does not require enforcement of the forfeiture."

Here, the Superior Court acted as the issuing authority and it is doubtful that an inferior court may take any action affecting the bond.

We have found no authority on this question and accept jurisdiction. If we are in error, the appellate court will at least have the benefit of our reasoning.

We begin our analysis by noting that petitioners have acknowledged the propriety of the initial forfeiture. It is unquestioned that defendant breached a condition of his bail when he failed to appear on November 27, 1984 to begin serving his state sentence.

The court also accepts petitioners' contention that the issue of moderation or remission of forfeited bonds is a matter for the court and one of equity, justice and legal discretion.

Our Superior Court has outlined three factors to be examined in determining whether a forfeiture should be remitted. They are:

"(a) Whether the apprehension and return of the Defendant was effected by the efforts of the bail bondsman;

(b) To what expense the Commonwealth was put by reason of the original failure of the Defendant to appear; and

(c) To what extent, if any, the forfeiture should be remitted." Commonwealth v. Jones, 286 Pa. Super. 507, 429 A.2d 436 (1981).

In Commonwealth v. Fleming, 336 Pa. Super. 377, 485 A.2d 1130 (1984), the court cited with approval the language of Judge Nygaard of this court:

"Mere participation in the search for the defendant is not enough. The apprehension or return of the defendant must either be effected by the efforts of the bondsman or (those efforts must) at least have a substantial impact on his apprehension and return."

In Commonwealth v. Reeher, 245 Pa. Super. 282, 369, A.2d 404 (1976), the Superior Court determined that the remission of forfeitures is a practice calculated to encourage bondsmen to actively seek the return of absent defendants and that the result of the bondsmen's efforts as well as the extent of their efforts are prime considerations in determining remission.

In the instant proceeding, no evidence whatsoever was offered by which the court may conclude that these bondsmen made any effort at all, active or passive, to bring about defendant's return. The first factor listed in the Jones decision clearly must be decided in the negative to the position of petitioners.

No testimony was offered as to the expense suffered by the Commonwealth in seeking to apprehend defendant. The court is, therefore, unable to relate those expenses to the amount of the forfeited bond. Any expense incurred, however, was not lessened through the efforts of petitioners and, for that reason, we will not place a burden on the Commonwealth to itemize those expenses.

We have stated that we find the evidence regarding the application to Judge Carney to either substitute a certificate of deposit or to issue a bail piece to be irrelevant. We so find because we are of the opinion that the clerk of courts acted properly in declining to accept and act upon Judge Carney's resultant order. The Superior Court, having set the amount of bail, would be the only court which could have accepted that application. Petitioner Pozzutti had am-

ple opportunity to present the application to the Superior Court after the clerk of courts declined to accept Judge Carney's order but did not attempt to do so. He cannot be heard now to complain of a failure for which he was responsible.

Petitioners next present a novel argument in which they contend that the Commonwealth has had the benefit of their bail monies for over six years and therefore has had the corresponding benefit of the accrued interest over that time. Petitioners calculate that interest on a compound annual rate of nine percent and contend that the amount earned exceeded $20,000.

Petitioners neglect two points. First, the six years that passed since the posting of their monies occurred solely by reason of the actions of defendant — the person in whom the bondsmen placed their faith. Second, petitioners have offered no evidence regarding what interest, if any, simple or compound, actually accumulated on the deposit.

Pa. R.C.P. 4015 authorizes the clerk of courts to hold bail monies "until full and final disposition of the case" and directs return, at that time, of the "deposit". The rule is silent regarding the accumulation of interest.

We will agree that the bondsmen have suffered through the loss of interest they might otherwise have earned upon their money but so, too, do all bondsmen who post a cash bail.

Were we to accept petitioners' argument, we would be setting a precedent which would, in effect, require the clerk of courts to maintain a record of a daily rate of interest on each cash bail placed with him and to pay that interest back to the bondsman upon return of his deposit.

Petitioners can cite no authority in support of such a proposition and we are not prepared to unilaterally adopt such a precedent.

Petitioner Joan Dovishaw, personal representative of the estate of Frank Dovishaw, contends that the forfeiture and subsequent judgment against the estate of Frank Dovishaw should be set aside because the power of attorney on the bond authorizing confession of judgment in the event of default expired with the death of Mr. Dovishaw. While powers of attorney normally do expire with the death of their maker, that principle is inapplicable in this case for two reasons.

First, the judgment entered upon the forfeiture was of no force and effect since the county had already obtained the monies through the forfeiture. Judgment and subsequent execution are appropriate and necessary in those instances where it is necessary to collect on a surety or realty bond.

Second, the warrant of attorney to confess judgment on the bond form bound Mr. Dovishaw, his "successors, heirs and assigns".

Here, again, petitioners would have the court adopt a position without precedent and one which, moreover, is illogical.

Were we to adopt the position of petitioners we would, in essence, be ruling that, whenever a bondsman died, the bond would no longer be of any effect and such a determination would require the Commonwealth to continually monitor each bond to determine if the bondsman was still alive or had died. It is precisely because of the impossibility of performing such a task that the bond binds the successors, heirs and assigns of the bondsman.

Finally, petitioners contend that they should receive the benefit of defendant's apprehension by

law enforcement authorities after the forfeiture and, indeed, after argument on this matter.

While we have no evidence before us relative to the procedures utilized in apprehending defendant, we cannot be blind to news accounts of his capture which related in substantial detail the extraordinary lengths to which the law enforcement authorities had to go to make the arrest. Involved were authorized electronic surveillance of a number of individuals, the early release from prison of a convicted felon and the providing of that felon with "bait" monies to entice defendant to meet with him, constant surveillance of the felon and a third party, travel to New York City and apprehension there of the disguised defendant in a New York City hotel lobby.

It is unquestioned that those efforts were totally unassisted by petitioners and we are at a loss to understand why petitioners should be benefitted by the diligence of the apprehending authorities. If subsequent unassisted apprehension by authorities of a fleeing defendant justifies revocation of a bail forfeiture, the principle stated by the Superior Court in Fleming that exoneration of a forfeiture "is a practice calculated to encourage bondsmen to seek actively the return of absent defendants" would have no meaning and it would make as much sense to not require bond at all.

For all the reasons stated, the motion of petitioners for refund of bail forfeiture is denied.